**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-17-0000496
31-MAR-2023
07:46 AM
Dkt. 24 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

JAMES B. NUTTER & COMPANY,
Respondent/Plaintiff-Appellee,

vs.

ELTON LANE NAMAHOE, SR.,
Petitioner/Defendant-Appellant,

and

SECRETARY OF HOUSING AND URBAN DEVELOPMENT,
Respondent/Defendant-Appellant.

SCWC-17-0000496

CERTIORARI FROM THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000496; CIVIL NO. 12-1-0113)

MARCH 31, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.    INTRODUCTION

Elton Lane Namahoe, Sr. lost his home to a judicial
foreclosure of a reverse mortgage after he allegedly failed to

make $500.00 worth of repairs. The lender, James B. Nutter Company (JBNC), brought a foreclosure proceeding against Namahoe for allegedly "default[ing] in the observance and performance of the terms, covenants and conditions [of his mortgage] by failing to repair the property as required by the Repair Rider to the Loan Agreement in a timely manner."

In the Circuit Court of the Third Circuit, JBNC filed a Motion for Summary Judgment and Decree of Foreclosure against Namahoe, which the court granted. More than two and a half years after the foreclosure, Namahoe filed a Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b) (2006) Motion for Relief from Judgment, specifically citing subsections 60(b)(3), (4), and (6). The circuit court denied these motions, in addition to Namahoe's subsequently filed HRCP Rule 59 (2000) Motion for Reconsideration.[1]

On appeal to the Intermediate Court of Appeals (ICA), Namahoe argued that JBNC sought foreclosure on impermissible grounds and that: (1) the circuit court abused its discretion in denying Namahoe's HRCP Rule 60(b)(3) motion because JBNC and its attorneys committed fraud in seeking the foreclosure; (2) under HRCP Rule 60(b)(4), the circuit court's judgment was void because he was not properly served; (3) under HRCP Rule

---

[1]    The Honorable Greg K. Nakamura presided.

60(b)(6), JBNC committed fraud on the court by failing to disclose the facts supporting foreclosure and by failing to satisfy statutory attorney affirmation requirements; and (4) the circuit court erred in denying his HRCP Rule 59 Motion for Reconsideration.

The ICA affirmed the circuit court's judgment in favor of JBNC. James B. Nutter & Co. v. Namahoe, No. CAAP-17-0000496, 2022 WL 899896 at *12 (App. March 28, 2022). In his application for certiorari, Namahoe asks this court to vacate the ICA's judgment affirming the circuit court's denial of his motions brought under HRCP Rule 60(b) and Rule 59.

We resolve Namahoe's appeal as follows. We agree with the ICA that the circuit court did not err in finding that Namahoe was time-barred from raising a HRCP Rule 60(b)(3) motion and that, under HRCP Rule 60(b)(4), the judgment was not void, because he was personally served. Further, the ICA and circuit court did not err in rejecting Namahoe's Rule 59 Motion for Reconsideration.

But we conclude that the ICA erred in affirming the circuit court's denial of Namahoe's request for relief under HRCP Rule 60(b)(6). Specifically, we hold that there are grounds for relief both on a fraud on the court theory and under the equitable principles governing foreclosure. JBNC submitted a materially deficient attorney affirmation to the circuit court

3

in support of its motion for summary judgment, and the balance of equities weighed strongly against foreclosure. Accordingly, we reverse the circuit court's denial of Namahoe's HRCP Rule 60(b)(6) motion and vacate the Decree of Foreclosure insofar as it would otherwise preclude Namahoe from asserting a wrongful foreclosure counterclaim.

## II. BACKGROUND

### A. Foreclosure and Circuit Court Proceedings

This case centers around a home equity conversion mortgage (reverse mortgage)[2] on Elton Lane Namahoe, Sr.'s home, which is located in Kurtistown, Hawaiʻi. Namahoe's lender, JBNC, through its former attorneys Clay Chapman Iwamura Pulice & Nervell (Clay Chapman), brought a foreclosure action against Namahoe for allegedly "default[ing] in the observance and performance of the terms, covenants and conditions by failing to repair the property as required by the Repair Rider to the Loan Agreement in a timely manner." Specifically, JBNC sought foreclosure based on Namahoe's alleged failure to complete $500.00 worth of repairs to his home.[3]

---

[2]     Although the loan at issue is more precisely a home equity conversion mortgage, this opinion refers to the broader term "reverse mortgage" for the sake of consistency with the parties' briefs, circuit court orders, and ICA opinion.

[3]     Lenders are required to set aside 150% of the estimated cost of repairs. 24 C.F.R. § 206.19(f)(1) (2009). Because the Repair Rider set

(continued . . .)

4

### 1.    Reverse mortgage loan agreement

On October 19, 2009, Namahoe executed a promissory note (Note) in favor of JBNC for the maximum principal sum of $189,000.00.  The agreement also included a home equity conversion loan agreement (Loan Agreement) and a Repair Rider.  Namahoe also executed, as mortgagor, an adjustable rate home equity conversion mortgage (Security Instrument) securing the Note and Loan Agreement and incorporating his property located at 16-1218 'Ōpe'ape'a Road, Kurtistown (Property) into the mortgage.  According to the Loan Agreement, out of a "Principal Limit" of $67,536.00, Namahoe was to receive a "Loan Advance" of $52,462.48.  The remaining balance was to cover the "Servicing Fee Set Aside," closing costs, and funds designated for repairs.

### 2.    Alleged breach of the Repair Rider

JBNC alleged that Namahoe "defaulted in the observance and performance of the terms, covenants and conditions" of the Repair Rider by failing to make timely repairs on the Property.  The Repair Rider, in relevant part, states:

> THIS REPAIR RIDER is made on October 19, 2009, and is incorporated into and shall be deemed to supplement the Loan Agreement of the same date made by the undersigned Lender and the undersigned Borrower and the Secretary of Housing and Urban Development ("Secretary").

---

(. . . continued)
aside a total of $750.00 for repairs, this indicates an estimated $500.00 cost of repairs.

I. Lender's Promises
A. The Lender shall set aside $750.00 from the initial Principal Limit under the Loan Agreement to be used for the purpose of bringing the Property up to the property standards required by the Secretary [of Housing and Urban Development (HUD)] by repairing: The hall and carport ceiling shows evidence of water stains due to roof leak.  The Front stair rail showed evidence of water rot.  All to be repaired.

. . .

C.  The Lender shall require one or more inspections by a HUD-approved inspector during the course of the repair work.  The Lender shall not release any funds for work which is not complete and which is not approved by a HUD-approved inspector.  The Lender certifies by executing this Repair Rider that the repairs which are funded under this Repair Rider will be completed in a manner to meet HUD property standards required by the Secretary as determined by a HUD-approved inspector.

. . .

E.  Until a HUD-approved inspector finds that all repairs required by Section I.A. of this Repair Rider have been completed in a satisfactory manner, the Lender shall not release funds in excess of (i) the total value of work satisfactorily completed, and (ii) the value of materials or equipment delivered to, and suitably stored at, the site but not yet incorporated in the work, less (iii) ten percent heldback, less (iv) prior advances under this Repair Rider.

II.  Borrower's Promises
A.  The Borrower will complete all repairs required by Section I.A. of this Repair Rider so that the Property meets the property standards required by the Secretary as determined by a HUD-approved inspector.

B.  Borrower shall cause work to begin on October 19, 2009.  Borrower shall have work completed by October 18, 2010.  Work is to be performed with reasonable diligence.  Should Borrower fail to comply with these terms, until all repair work is satisfactorily completed Borrower shall not request and Lender shall not make any further payments under the Loan Agreement except for payment of repairs

6

> required by Section I.A. of this Repair Rider
> and Loan Advances required under Section 4.5.
> of the Loan Agreement.
>
> . . .

(Emphasis added.)

As a result of Namahoe's alleged failure to complete the enumerated repairs, JBNC demanded immediate payment in full of all outstanding principal and accrued interest arising from the reverse mortgage.[4]  Although the Repair Rider does not include an acceleration provision, section 9(b) of the Security Instrument states that JBNC may require "immediate payment in full of all sums secured by this Security Instrument, upon approval by an authorized representative of the Secretary, if: . . . (iii) [a]n obligation of the Borrower under this Security Instrument is not performed."  Thus, a failure to satisfy the duty to repair under the Repair Rider may qualify as a sufficient breach to require immediate payment.

JBNC was required to notify Namahoe and the Secretary of HUD (Secretary) if the loan ever became due and payable under 9(b), and was limited in its right to pursue foreclosure by the terms of the Security Instrument:

---

[4]     Compliance with the Repair Rider was to be determined by a HUD-approved inspector.  As set forth below, the record does not establish whether any HUD-approved inspectors surveyed the repairs or reported any deficiencies with Namahoe's repair work.

> Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:
>
> > (i)   Correct the matter which resulted in the Security Instrument coming due and payable; or
> >
> > (ii)  Pay the balance in full; or
> >
> > (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or
> >
> > (iv)  Provide the Lender with a deed in lieu of foreclosure.

The Loan Agreement and Note outlined the process for notice.  The Loan Agreement provided, in relevant part:

> 6.3.  <u>Notices</u>.  Any notice to Borrower provided for in this Loan Agreement shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be <u>directed to the property address shown in the Security Instrument</u> or any other address all Borrowers jointly designate.

The Note provided:

> 9.  GIVING OF NOTICES
> Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower <u>at the Property address above or at a different address if Borrower has given Lender a notice of Borrower's different address</u>.

(Emphases added.)

JBNC mailed a letter to Namahoe's P.O. Box on November 16, 2011 titled "Notice of Intent to Foreclose."  The letter stated:

> Our records reflect that a default now exists on the above referenced loan.  The default consists of the failure to repair the property as required by the Repair Rider to the Loan Agreement in a timely manner.  As a result your loan has been called due and payable because of non-

8

> compliance with the Deed of Trust/Mortgage securing the
> Promissory Note underlying this home loan.
>
> . . .
>
> This letter serves as further notice that [JBNC]
> intends to enforce the provisions of the Note and Deed of
> Trust (Mortgage).  Unless you cure the default on or before
> 30 days from the date of this letter, this shall serve as
> further notice to you that immediately thereafter, and
> without further demand or notice to you, [JBNC] shall
> accelerate the entire amount due of both principal and
> interest, which shall become immediately due and payable,
> invoke any remedies provided for in the Note and Deed of
> Trust (Mortgage), including but not limited to the
> foreclosure sale of the property.

On April 6, 2012, JBNC sent another letter to Namahoe at his P.O. Box.  It stated, "[y]ou did not comply with the Repair Rider to the Loan Documents in that you failed to repair the property in a timely manner.  Therefore, the Lender has called the loan immediately due and payable."

Namahoe's alleged violation of the Repair Rider triggered the acceleration of his total remaining balance. Thus, for a $500.00 deficiency, Namahoe was presented with a bill for $75,946.58 plus interest, and he ultimately lost his home.

### 3.  Foreclosure proceeding in the circuit court

On March 6, 2012, JBNC filed its foreclosure complaint against Namahoe in the Circuit Court of the Third Circuit. Robert A. Estacion, a civil process server, failed to serve the complaint on Namahoe during his first three attempts. Estacion's stated reasons for non-service include "NO ONE HOME"

and "NOT LIVING AT THIS ADDRESS (per neighbor and friend down the street)." JBNC then filed two Freedom of Information Act (FOIA) requests seeking information related to Namahoe's mailing address. In response to the FOIA request for a physical address associated with Namahoe's P.O. Box, the post office provided the address as 16-1218 ʻŌpeʻapeʻa Road. JBNC also asserted that it conducted a "skip trace"[5] on Namahoe and confirmed the Property address as his current address.

On November 13, 2012, Estacion filed a Return and Acknowledgment of Service which included what appeared to be Namahoe's signature, indicating personal service of the complaint at Namahoe's home. Based on the record, Namahoe did not subsequently answer or otherwise respond to the Complaint.[6]

On May 20, 2013, JBNC filed a Motion for Summary Judgment and Decree of Foreclosure, exclusively relying on the allegation that Namahoe had failed to repair the property in a timely manner.[7]

In support of the motion, JBNC attached a Declaration of Indebtedness signed by JBNC's Vice President Bruce Huey,

---

[5] Here, "skip trace" refers to a LexisNexis Accurint report.

[6] Four years later, in his declaration submitted in support of his HRCP Rule 60(b) motion, Namahoe attested that he did not recall signing the Return and Acknowledgement of Service and that he "would not have understood it anyway."

[7] JBNC did not expressly inform the circuit court that Namahoe's alleged default concerned only $500.00 of repairs.

attesting that he had personal knowledge that "based on [his] review of the records and files related to the mortgage loan" Namahoe "defaulted in the observance and performance of the terms, covenants and conditions by failing to repair the property, as required by the Repair Rider to the Loan Agreement, in a timely manner." Huey's declaration included a copy of HUD's approval of JBNC's request to call the loan due and payable, and specified that written notice was given to Namahoe regarding his obligation to pay in full all outstanding principal and accrued interest due on the loan.

JBNC also attached an attorney affirmation signed by Robert M. Ehrhorn, Jr. of Clay Chapman, pursuant to Hawai'i Revised Statutes (HRS) § 667-17 (Supp. 2012) (repealed 2017) (current version at HRS § 667-18), which stated:

> 2. On May 3, 2013, I received a written communication from Bruce Huey, Vice President of James B. Nutter & Company, who informed me that he personally reviewed [JBNC's] documents and records relating to this loan file . . . [and] confirmed the factual accuracy of the allegations set forth in the Motion for Summary Judgment[.]
>
> 3. Based upon the communication from the person identified in Paragraph 2 above, as well as upon my own inspection and other reasonable inquiry under the circumstances, I affirm that, to the best of my knowledge, information, and belief, the Motion for Summary Judgment, and other papers filed or submitted to the Court in this matter contain no false statements of fact or law and that [JBNC] has legal standing to bring this foreclosure action. I understand my continuing obligation to amend this Affirmation in light of newly discovered material facts following its filing.
>
> 4. To the best of Declarant's knowledge, information, and belief the allegations contained in the

11

> Motion for Summary Judgment are warranted by existing law and have evidentiary support.

(Emphases added.)

Other than these declarations, JBNC did not provide any evidence of Namahoe's breach of the reverse mortgage terms and failure to cure the default.

Namahoe did not oppose the Motion for Summary Judgment and Decree of Foreclosure, and he did not appear before the circuit court. The circuit court's relevant Findings of Fact and Conclusions of Law were as follows:

### FINDINGS OF FACT

. . .

3. [Namahoe] defaulted in the observance and performance of the terms, covenants and conditions by failing to repair the property, as required by the Repair Rider to the Loan Agreement, in a timely manner. [HUD] approved [JBNC's] Request to Call The Loan Due And Payable, for immediate payment in full of all outstanding principal and accrued interest as required by paragraph 7(B)(iii) of the Note.

4. Written notice was given to [Namahoe] that because of his failure to repair the property as required by the Repair Rider to the Loan Agreement in a timely manner, [JBNC] required immediate payment in full of all outstanding principal and accrued interest due on the loan. However, despite said notice the default was not cured and the loan has not been paid off.

. . .

### CONCLUSIONS OF LAW

. . .

3) [JBNC] is entitled to have its Mortgage foreclosed, a commissioner appointed to take possession of and sell the mortgaged property . . . and the proceeds of sale applied, first, to the payment of delinquent of real

> property taxes, then to the amounts due on [JBNC's]
> Mortgage and the balance, if any, as determined by the
> Court.

(Emphasis in original.)

Subsequently, JBNC purchased Namahoe's home for $85,904.96, and Namahoe was served with a Writ of Ejectment on June 22, 2014.[8]

### 4.    Namahoe's HRCP Rule 60(b) Motion for Relief

On January 3, 2017, more than two and half years after being served with the Writ of Ejectment, Namahoe filed a HRCP Rule 60(b) Motion for Relief from Judgment, citing subsections 60(b)(3), (4), and (6).[9]

---

[8]    According to Namahoe, the loss of his only home caused him to become unsheltered.

[9]    HRCP Rule 60(b) states, in relevant part:

> **Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.**  On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; . . . or (6) any other reason justifying relief from the operation of the judgment.  The motion shall be made within a reasonable time, and for reason[] . . .(3) not more than one year after the judgment, order, or proceeding was entered or taken.  A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.  This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.

Namahoe also submitted a declaration in which he attested that he timely made the required repairs pursuant to the Repair Rider, and that JBNC had no right to foreclose:

> 5.  I understood I was supposed to make repairs after I received the money.  A neighbor (name forgotten) who was a tenant of Nick Rapoza helped me repair the entire front porch railing and I bought putty and we plugged the leak in the carport roof and repaired the surface.  There was no leaking after the repairs were done.  This was all done right after I got the money and was simple to do.  I used my own money and some labor to make the repairs.
>
> [ . . . ]
>
> 7.  I do not remember [Estacion] handing me the foreclosure Complaint on November 9, 2012.  [Nor] do I recall signing any paper that I received the Complaint.  I would not have understood it anyway.
>
> 8.  My first memory about the foreclosure was a telephone call from an attorney who said he wanted to inspect my house and property because it was his job to sell my house at a foreclosure auction.  I was shocked!  I did not know of any foreclosure.  How come no one wrote me, telephoned me, or came to the house.  I was always there because I had no car, very little money and only a few neighbors and relatives.  I had to hitch rides from my house in remote Hawaiian Acres to shop for food and collect my mail at my post office box in Hilo.  I was angry and upset and never heard again from the attorney.

Namahoe's HRCP Rule 60(b)(3) motion argued that JBNC committed fraud by (1) failing to obtain an inspection by a HUD-approved inspector as required by the Repair Rider, (2) failing to use the $750.00 in set aside funds for repairs, and (3) failing to give Namahoe a "realistic opportunity to have the mortgage reinstated."[10]  Namahoe also argued that JBNC's attorneys, the law firm of Clay Chapman, committed fraud by

---

[10]    Namahoe does not provide any additional factual basis for these claims beyond his declaration.

14

failing to include pertinent facts and disclosures in its attorney affirmations as required by HRS § 667-17. Specifically, Namahoe alleged that Clay Chapman failed to disclose the aforementioned instances of alleged fraud in their HRS § 667-17 affirmation, and that the attorneys failed to amend the affirmation after the companion Domingo case clarified that noncompliance with a similar repair rider was an inadequate basis for foreclosure.[11] James B. Nutter & Co. v. Domingo, No. CAAP-15-0000659, 2016 WL 5920412 (App. Oct. 11, 2016) (SDO). Namahoe also argued that his motion was timely because the "final act" in the foreclosure proceeding was March 26, 2016, when JBNC allegedly sold the Property to a third party.[12]

---

[11] We take judicial notice of the court records in the unpublished Domingo case, in accordance with Hawai'i Rules of Evidence (HRE) Rule 201 (1993). James B. Nutter & Co. v. Domingo, No. CAAP-15-0000659, 2016 WL 5920412 (App. Oct. 11, 2016) (summary disposition order). Because the unpublished Domingo case figured prominently in the pleadings and oral argument in this case, a brief summary is provided here.

The Domingo foreclosure was similar to the Namahoe foreclosure, including a nearly identical repair rider and loan called due for alleged failure to make repairs. Id. at *1. Both Domingo and Namahoe asserted that they completed necessary repairs. See id. at *1—2.

The ICA affirmed the circuit court's ruling that JBNC's assumption that Domingo had failed to make the required repairs was not a sufficient justification to accelerate the mortgage note and seek foreclosure. Id. The ICA affirmed the order and clarified that "JBNC's burden, . . . was to prove that at trial Domingo would be unable to prove that the required repairs were done." Id. at *2.

The Domingo foreclosure action discussed above is distinct from the Domingo v. James B. Nutter & Co., Civil No. 16-1-0249, CAAP-17-0000324, wrongful foreclosure action pending before the ICA. The latter action is discussed in further detail below.

(continued . . .)

Next, Namahoe asserted that the Decree of Foreclosure was void under HRCP Rule 60(b)(4) because, as a result of JBNC allegedly "knowingly mailing notices to an address where there was no mail delivery," Namahoe was deprived of notice of the foreclosure proceeding and an adequate opportunity to defend against the action.[13]

Finally, Namahoe raised a HRCP Rule 60(b)(6) claim, arguing that JBNC committed fraud on the court. Unlike his HRCP Rule 60(b)(3) fraud claim which centered on JBNC's acts and omissions in relation to Namahoe, the HRCP Rule 60(b)(6) motion focused on an alleged "pattern of mortgage abuse" by lenders such as JBNC who make it a part of their business operations to bring "unfounded" foreclosure actions.

JBNC did not present any new evidence rebutting the statements in Namahoe's declaration. Rather, in response to Namahoe's HRCP Rule 60(b)(3) motion, JBNC responded that the motion was untimely because the relevant final act in this case was the July 2, 2013 Decree of Foreclosure. With regard to

---

(. . . continued)
[12] Evidence of the alleged sale to a third party is not in the record. However, JBNC did not dispute Namahoe's claim that the property had been sold on March 26, 2016.

[13] Namahoe did not present a factual basis for this allegation beyond that he "believes that in accordance with the standard practice of the United States Postal Service [JBNC] was receiving the returned envelopes marked undeliverable," and that JBNC subsequently mailed pleadings to Namahoe's P.O. Box after JBNC "already knew that the post office box had been closed." (Emphasis added.)

Namahoe's HRCP Rule 60(b)(4) motion, JBNC maintained that Namahoe was personally served with the Complaint on November 9, 2012, and that neither JBNC nor the circuit court had an affirmative duty to "track Namahoe down" due to Namahoe's failure to inform the court of any changes to his mailing address. Finally, on Namahoe's HRCP Rule 60(b)(6) claim, JBNC responded that even if it had committed fraud, which JBNC disputes, the "substance of [Namahoe's] allegations" fails to rise to the level of "corruption of the judicial process itself" as required by Cvitanovich-Dubie v. Dubie. 125 Hawai'i 128, 144, 254 P.3d 439, 455 (2011) (quoting Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 431 n.42, 32 P.3d 52, 75 n.42 (2001), as amended (Oct. 11, 2001)). Rather, JBNC's alleged acts of fraud only concerned "a single litigant." JBNC did not present any additional evidence of Namahoe's alleged noncompliance with the terms of the reverse mortgage.

The circuit court denied Namahoe's HRCP Rule 60(b) motion in full. With regard to Namahoe's HRCP Rule 60(b)(6) fraud on the court argument, the court determined:

> Regarding the fraud on the court type theories I'm going to think that that's more properly addressed in [Domingo v. James B. Nutter & Co., Civil No. 16-1-0249, CAAP-17-0000324].[14] I see that case as being that

---

14 Domingo v. James B. Nutter & Co., Civil No. 16-1-0249, CAAP-17-0000324, is pending before the ICA. It involves Domingo and Namahoe's wrongful foreclosure claims against JBNC. We take judicial notice of the court records in this related case, in accordance with HRE Rule 201.

17

independent action that's mentioned under Rule 60(b). And my impression is that independent action is not really a 60(b) type motion.

There's still a fraud on the court type claim for relief by Mr. Namahoe against Clay Chapman. <u>And Mr. Namahoe would have at least the opportunity to attempt to amend the pleadings in that case to state, let's say, clear claims for relief against [JBNC].</u> So that's what the Court's belief is.

. . .

I think Mr. Namahoe still has a claim for relief against . . . Clay Chapman. And then you have the opportunity to amend. I'm thinking that you already have that action already . . . . You did not need to go forward on the . . . case regarding those theories cause they're in the [<u>Domingo v. James B. Nutter & Co.</u>, Civil No. 16-1-0249, CAAP-17-0000324] action. <u>You already have the forum for that. It's not as if I -- you know, the Court has to set aside the judgment here for you to be able to address your issues in the other case</u>. It's my thinking.

(Emphases added.)

The circuit court presented Namahoe with a catch-22. The circuit court required Namahoe to pursue his fraud on the court claim against JBNC in the wrongful foreclosure action, <u>Domingo v. James B. Nutter & Co.</u>, Civil No. 16-1-0249, CAAP-17-0000324. However, as noted at oral argument, Namahoe was precluded by the circuit court from asserting a wrongful foreclosure claim in that action due to the issuance of the Decree of Foreclosure below. Thus, Namahoe's path to recovery was effectively blocked, and his only opportunity for relief is the instant case.

On April 13, 2017, Namahoe filed a HRCP Rule 59 motion for reconsideration of the circuit court's order denying his

18

motion for relief, arguing that Hungate v. Law Off. of David B. Rosen, 139 Hawai'i 394, 391 P.3d 1 (2017), established the importance of notice to foreclosure proceedings.[15]  He added that JBNC was aware that the notices mailed to the Property's physical address and the P.O. Box were deemed undeliverable and any alleged personal service was ineffective because Namahoe's serious health conditions and his use of marijuana to treat his pain impeded his comprehension.  The circuit court denied Namahoe's motion on the grounds that HRCP Rule 5(a) only required JBNC to serve Namahoe with the Complaint, and that Hungate did not provide an adequate basis for altering or amending the denial of Namahoe's HRCP Rule 60(b) motion.  See HRCP Rule 5(a) (2019).

## B.    ICA Appeal

On appeal to the ICA, Namahoe raised two points of error, arguing first that the circuit court erred in denying Namahoe's HRCP Rule 60(b) motion because (a) the Decree of Foreclosure was obtained through JBNC's fraud, misrepresentation, and misconduct; (b) JBNC failed to provide adequate notice to Namahoe; and (c) JBNC and its attorneys

---

[15]    Hungate was decided in the context of a non-judicial foreclosure, in which there is, by definition, no judicial officer to supervise and ensure the integrity of the foreclosure process.  139 Hawai'i at 398, 391 P.3d at 5. Accordingly, Hungate is distinguishable from the immediate case and need not be discussed further.

19

committed fraud on the court, all of which prevented Namahoe from fairly presenting his case.  Namahoe next argued that the circuit court abused its discretion by denying Namahoe's HRCP Rule 59 motion for reconsideration.

With regard to his HRCP Rule 60(b) arguments, Namahoe largely reiterated points raised before the circuit court. Namahoe reasserted the claims underpinning his HRCP Rule 60(b)(3) motion, arguing that JBNC had no legal authority to seek foreclosure because (1) Namahoe did not receive notice of the proceedings; (2) JBNC did not notify Namahoe of his right to reinstatement; (3) JBNC did not perform a HUD inspection required by the Repair Rider; and (4) JBNC's attorneys failed to include the previous facts in its affirmation and failed to amend the affirmation to include the related Domingo foreclosure action, which involved JBNC, their same attorneys, and "the same justification for the reverse mortgage foreclosure" which the circuit court found improper and in violation of HRS § 667-17.

Namahoe again raised his HRCP Rule 60(b)(4) claim, asserting that the Decree of Foreclosure was void because Namahoe lacked adequate notice of the proceeding, thus depriving Namahoe of due process.

In his HRCP Rule 60(b)(6) claim, Namahoe argued that he was entitled to relief from the Decree of Foreclosure because JBNC and its attorneys did not disclose all relevant facts to

the circuit court.  Specifically, Namahoe asserted that JBNC's conduct rose to the level of fraud on the court because its attorneys submitted an insufficient and misleading attorney affirmation, as required by HRS § 667-17, despite the plain language of the reverse mortgage not permitting foreclosure under the circumstances.  Namahoe also reasserted his HRCP Rule 60(b)(3) fraud arguments, stating that JBNC had not informed Namahoe of his right to reinstatement, did not inspect the property using a HUD-approved inspector, and pursued foreclosure despite the ruling in the Domingo foreclosure action.  These errors by JBNC "went to the very heart of the circuit court's jurisdiction and [JBNC's] ability to even foreclose."

With respect to the circuit court's denial of Namahoe's HRCP Rule 59 Motion for Reconsideration, Namahoe argued that the circuit court mistakenly concluded that JBNC's notices were sufficient.  Namahoe maintained that new evidence provided in support of his HRCP Rule 59 motion demonstrated that (1) JBNC was aware that Namahoe was not receiving mail at his physical address and (2) Namahoe's serious health conditions at the time of the proceedings impeded his comprehension.

The ICA affirmed the circuit court's orders denying Namahoe's HRCP Rule 60(b) motion for relief and HRCP Rule 59 motion for reconsideration.  James B. Nutter & Co. v. Namahoe, No. CAAP-17-0000496, 2022 WL 899896 at *12 (App. March 28,

21

2022). First, the ICA held that Namahoe's HRCP Rule 60(b)(3) motion asserting fraud was untimely, as the applicable "judgment, order, or proceeding" in this case was the Decree of Foreclosure entered on July 2, 2013 — nearly four years before Namahoe's HRCP Rule 60(b)(3) motion. Id. at *7. Second, the ICA determined from the record that Namahoe was personally served with the Complaint and was therefore not denied due process. Id. at *7–9. Third, the ICA held that the circuit court did not abuse its discretion when it denied Namahoe relief under HRCP Rule 60(b)(6) on the grounds that Namahoe could seek appropriate relief in an alternate forum, i.e., his separate wrongful foreclosure action against JBNC raised in Domingo v. James B. Nutter & Co., Civil No. 16-1-0249, CAAP-17-0000324. Id. at *10–11. The ICA also noted that by the time the JBNC wrongful foreclosure suit was initiated by Domingo and Namahoe, Namahoe's property had already been purchased by JBNC at auction and sold to a third party. Id. at *11.

Finally, the ICA affirmed the circuit court's denial of the Rule 59 motion and rejected Namahoe's claims of new evidence, finding that much of the evidence was not in fact new, and that no "cogent argument" was raised as to why the allegedly "new" evidence could not have been presented earlier. Id. at *11–12.

## C.    Supreme Court Proceedings

Namahoe filed a timely application for a writ of certiorari.

First, he argues that the ICA erred in affirming the lower court's denial of his HRCP Rule 60(b)(3) motion because (1) the one-year deadline began running on March 26, 2016, when JBNC allegedly sold the property to a third party; (2) it did not take into account the fact that JBNC's foreclosure was based on "allegedly unrepaired repairs" worth $500.00 and that JBNC was aware that Namahoe actually made those repairs; and (3) it "leave[s] the door open" for other bad actors to instigate "bogus proceedings."   (Emphasis in original.)

Second, he argues that the ICA erred in affirming the lower court's denial of his HRCP Rule 60(b)(4) motion based on the Return and Acknowledgement of Service.  Namahoe asserts that the fact that the signature on the Return and Acknowledgement of Service is "markedly different" from his signature on the Note, Loan Agreement, and Repair Rider should have been sufficient to rebut the prima facie evidence of notice.  He also argues that the entire proceedings were void under Hungate, 139 Hawai'i 394, 391 P.3d 1 (2017), because statutory notice requirements are trumped by the more "stringent" notice requirements included in the specific "loan/note/mortgage documents."

Third, Namahoe asserts that the ICA erred in affirming the circuit court's denial of his HRCP Rule 60(b)(6) motion because the circuit court failed to reach the merits of the issue and "merely punted" it by declaring that Namahoe could bring the claim in the separate wrongful-foreclosure action.

Lastly, Namahoe asserts that the ICA erred by affirming the circuit court's denial of his HRCP Rule 59 motion, because his counsel presented new information — after the conclusion of his HRCP Rule 60(b) motion — regarding his P.O. Box being closed in September 2013. He further argued that the ICA "missed the issue" in distinguishing Hungate because it actually "stands for the proposition" that when loan and mortgage documents require additional notice requirements on top of those required by the statutes, "failure to comply" with the additional requirements is "fatal to the foreclosure itself." Hungate, 139 Hawai'i at 404, 391 P.3d at 11.

### III.  STANDARDS OF REVIEW

#### A.   HRCP Rule 60(b) Relief From Judgment or Order

"[T]he trial court has a very large measure of discretion in passing upon motions under [HRCP] Rule 60(b) and its order will not be set aside unless we are persuaded that under the circumstances of the particular case, the court's refusal to set aside its order was an abuse of discretion."

24

Haw. Hous. Auth. v. Uyehara, 77 Hawai'i 144, 147, 883 P.2d 65, 68 (1994) (quoting Paxton v. State, 2 Haw. App. 46, 48, 625 P.2d 1052, 1054 (1981)).  Therefore, the circuit court's decisions related to Namahoe's HRCP Rule 60(b) motion are reviewed for an abuse of discretion.  "The burden of establishing abuse of discretion [in denying a HRCP Rule 60(b) motion] is on the appellant, and a strong showing is required to establish it." Ditto v. McCurdy, 103 Hawai'i 153, 162, 80 P.3d 974, 983 (2003).

Notwithstanding this general rule, "under HRCP Rule 60(b)(4), an order is 'void only if the court that rendered it lacked jurisdiction of either the subject matter or the parties or otherwise acted in a manner inconsistent with due process of law.'"  In re Haw. Elec. Co., Inc., 149 Hawai'i 343, 362—63, 489 P.3d 1255, 1274—75 (2021).  As such, a denial of a HRCP Rule 60(b)(4) motion is reviewed *de novo*.  See id.

## B.   HRCP Rule 59 Motion for Reconsideration

> As this court has often stated, "[t]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion." Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding.

Sousaris v. Miller, 92 Hawai'i 505, 513, 993 P.2d 539, 547 (2000) (citations omitted) (quoting First Ins. Co. of Haw. Ltd. v. Lawrence, 77 Hawai'i 2, 17, 991 P.2d 489, 504 (1994)).

The appellate court reviews a "trial court's ruling on a motion for reconsideration . . . under the abuse of discretion standard." Ass'n of Apartment Owners of Wailea Elua, 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002). An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

**C.    Foreclosure Actions**

> Foreclosure is an equitable action. "Courts of equity have the power to mold their decrees to conserve the equities of the parties under the circumstances of the case." A court sitting in equity in a foreclosure case has the plenary power to fashion a decree to conform to the equitable requirements of the situation. Whether and to what extent relief should be granted rests within the sound discretion of the court and will not be disturbed absent an abuse of such discretion.

Peak Cap. Grp., LLC v. Perez, 141 Hawai'i 160, 172, 407 P.3d 116, 128 (2017) (citations omitted) (quoting Honolulu, Ltd. v. Blackwell, 7 Haw. App. 210, 219, 750 P.2d 942, 948 (1988)).

A circuit court abuses its equitable discretion "by issuing a decision that clearly exceeds the bounds of reason or disregard[s] rules or principles of law or practice to the substantial detriment of the appellant." Hawaii Nat'l Bank v. Cook, 100 Hawai'i 2, 7, 58 P.3d 60, 65 (2002) (quoting Shanghai

26

Inv. Co. v. Alteka Co., 92 Hawai'i 482, 493, 993 P.2d 516, 526 (2000)).

## IV. DISCUSSION

### A. Introduction

We hold that the ICA did not err in affirming the circuit court's denial of Namahoe's motions under HRCP Rule 59, Rule 60(b)(3), and Rule 60(b)(4). However, the ICA erred in affirming the circuit court's denial of relief under HRCP Rule 60(b)(6) for two reasons. First, the record establishes that JBNC failed to comply with HUD regulations and Hawai'i state law in pursuit of foreclosure against Namahoe. Thus, JBNC lacked legal authority to foreclose and its attorneys provided the lower court with an inadequate and misleading HRS § 667-17 attorney affirmation. This conduct constitutes fraud on the court for purposes of HRCP Rule 60(b)(6).

Second, the balance of equities weighs heavily against a decree of foreclosure for the alleged failure to complete $500.00 worth of repairs. HRCP Rule 60(b) allows courts to relieve a party from a final judgment or order "upon such terms as are just[.]" Here, justice requires Namahoe to be afforded an effective remedy.

**B.    The Legal Framework Protecting Homeowners**

Before analyzing JBNC's conduct toward Namahoe in isolation, a brief review of reverse mortgages and the relevant regulatory landscape is warranted.  Reverse mortgages are distinct from conventional mortgages both in their function and purpose.  Reverse mortgages, of which home equity conversion mortgages (HECMs) make up a significant portion,[16] are loans that allow senior homeowners to withdraw a portion of their home's equity in the form of cash.  Consumer Financial Protection Bureau, Reverse Mortgages: Report to Congress 5–6 (June 2012).  This provides seniors with capital to pay for living expenses and other costs, with the loan only reaching maturity when the borrower dies, sells the home or moves out, or fails to maintain the property or pay necessary fees and taxes.  Id. at 5–6, 22; see also HRS § 506-10 (2008) (listing the events that make a reverse mortgage loan due).  This transaction for cash at the expense of ownership of one's home — the largest and most significant asset most Americans possess — has significant ramifications for senior citizens, their families, and the communities in which they live.  Protecting Seniors: A Review of

---

[16]    The mortgage at issue in this case is specifically a home equity conversion mortgage.  HECMs are only available for seniors above 62 years of age who own a property and occupy it as their principal residence.  For consistency with the briefs, circuit court documents, and ICA Memorandum Opinion, this court uses the broader term "reverse mortgage."

the FHA's Home Equity Conversion Mortgage (HECM) Program: Hearing Before the Subcomm. on Housing, Community Development, and Insurance of the H. Comm. on Financial Services, 116th Cong. 2 (2019) (statement of Rep. Wm. Lacy Clay, Chairman, H. Subcomm. on Hous., Cmty. Dev., and Ins.) ("The racial wealth gap is exacerbated as countless families[, largely racial minorities,] are deprived of the chance to pass on their homes and other property to their children and other heirs, leading to . . . gutted city blocks, and less overall wealth.")

Seniors face a significant risk of abuse by lenders, and the consequences of reverse mortgages can be unclear at the time of signing, but disastrous for mortgagors. See Reverse Mortgages: Polishing Not Tarnishing the Golden Years: Hearing Before the Senate Special Comm. on Aging, 110th Cong. 1 (2007) (statement of Senator Herb Kohl, Chairman, Special Comm. on Aging) ("[Reverse mortgage] [a]gents are targeting seniors aggressively in ways that this Committee has seen before: through direct mail, celebrity endorsements, and free lunch seminars. Marketers often gloss over the risks of a reverse mortgage, but they convey the pay-off quite clearly."); Sarah B. Mancini & Odette Williamson, Reversing Course: Stemming the Tide of Reverse Mortgage Foreclosures Through Effective Servicing and Loss Mitigation, 26 Elder L.J. 85, 86—87, 119—20 (2018) ("[o]lder adults who have taken out reverse mortgages are

particularly resource-constrained.  They tend to take out these loans as a last resort, motivated by a lack of sufficient income to cover rising medical costs and other essential expenses.").  Namahoe appears to have been targeted in a similar manner; according to his declaration: "some folks came to my door and told me I could obtain a loan and not pay back anything while I lived and resided at the property.  I believed them and I obtained what I understand was a reverse mortgage. . . . I spent the money over the years paying bills and buying food."

Due to the significant risks of abuse by lenders and inadequate understanding of reverse mortgage agreements by many senior citizens, reverse mortgages and foreclosures are subject to stringent rules and regulations promulgated by both federal and state authorities.  Lenders offering loans backed by HUD, of which reverse mortgages and HECMs are one type, are required to make reasonable efforts to conduct face-to-face interviews with delinquent mortgagors, 24 C.F.R. § 203.604 (2009), conduct loss mitigation efforts to cure defaults, 24 C.F.R. §§ 203.605 (2009) and 203.501 (2009), conduct pre-foreclosure review, 24 C.F.R. § 203.606 (2009), and facilitate reinstatement of the mortgage, 24 C.F.R. § 203.608 (2009).  Failure to comply with these regulations may result in civil penalties or the withdrawal of a mortgagee's HUD approval.  24 C.F.R. § 203.500 (2009).

Our state legislature has also acted to combat predatory lending in the context of reverse mortgages. Lenders are required to refer borrowers to HUD-approved counselors, and must be presented with a signed certification confirming that the borrower has received counseling prior to accepting an application for a reverse mortgage loan. HRS § 506-10.

Further, in the aftermath of economic crash and foreclosure crisis in the early-2010s, the legislature passed HRS § 667-17. The language of the attorney affirmation even refers to the conditions that gave rise to the statute:

> During and after August 2010, numerous and widespread insufficiencies in foreclosure filings in various courts around the nation were reported . . . , including failure to review documents and files to establish standing and other foreclosure requisites; filing of notarized affidavits that falsely attest to such review and to other critical facts in the foreclosure process; and "robosignature" of documents.

HRS § 667-17.

Importantly for this appeal, HRS § 667-17 requires attorneys filing on behalf of mortgagees seeking foreclosure to sign and submit an affirmation that the attorney has verified the accuracy of filed documents, and confirm that the lender has an adequate factual and legal basis for pursuing foreclosure.[17] As officers of the court, attorneys for mortgagees seeking

_____

[17] HRS § 667-17 states, "[a]ny attorney who files on behalf of a mortgagee seeking to foreclose on a residential property under this part shall sign and submit an affirmation that the attorney has verified the accuracy of the documents submitted, under penalty of perjury and subject to applicable rules of professional conduct." HRS § 667-17.

foreclosure must affirm not only the accuracy of the factual allegations underlying foreclosure, but also the legal sufficiency of foreclosure claims.[18]  Id.  Attorneys are also under a "continuing obligation to amend" the affirmation in the event of newly discovered material facts after filing.  Id.

It is within this expansive legislative and regulatory framework that JBNC and its attorneys at Clay Chapman pursued foreclosure on Namahoe's only home — all on the basis of a $500.00 repair obligation.

**C.    The ICA Did Not Err in Affirming the Circuit Court's Denial of Namahoe's HRCP Rule 59, Rule 60(b)(3), and Rule 60(b)(4) Motions**

**1.    HRCP Rule 59 Motion for Reconsideration**

Namahoe asserts that the ICA erred in affirming the circuit court's denial of his HRCP Rule 59[19] motion for

---

[18]    One of the form affirmations in § 667-17 states:

Based upon my communication with [the foreclosing entity], as well as upon my own inspection and other reasonable inquiry under the circumstances, I affirm that, to the best of my knowledge, information, and belief, the Summons, Complaint, and other papers filed or submitted to the Court in this matter contain no false statements of fact or law and that plaintiff has legal standing to bring this foreclosure action.

(Emphasis added.)

[19]    HRCP Rule 59 states, in relevant part:

(a) Grounds.  A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been

(continued . . .)

32

reconsideration despite (1) the existence of "new evidence" showing the P.O. Box was closed in September 2013; and (2) the supreme court decision in Hungate, decided shortly before his HRCP Rule 60(b) motion, which stands for the proposition that failure to comply with the terms of a mortgage is fatal to the foreclosure itself.[20]  Hungate v. Law Off. of David B. Rosen, 139 Hawai'i 394, 391 P.3d 1 (2017).

This court has stated, "[t]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion."  Amfac, 74 Haw. at 114, 839 P.2d at 27.  "Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have

---

(. . . continued)
> granted in actions at law in the courts of the state; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the State.  On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

[20]  The ICA correctly distinguished Hungate.  In Hungate, this court held that in a non-judicial foreclosure, the mortgagee has a duty to follow statutory and contractual notice requirements in order to ensure the borrower receives adequate notice of the foreclosure proceeding.  Hungate, 139 Hawai'i at 403-04, 391 P.3d at 10-11.  While Namahoe is seeking to void a judgment in a reverse-mortgage judicial-foreclosure proceeding, Hungate instead dealt with non-judicial foreclosure — a distinct procedure.  See id. at 399, 391 P.3d at 6.  That is, Hungate is premised on clarifying the burdens on the mortgagee in the context of a proceeding in which "[t]here is no neutral party, such as a court, [to] supervis[e] the sale and ensur[e] a fair and reasonable process."  Id. at 409, 391 P.3d at 16.  Such is not the case here, where the judgment of foreclosure was rendered by the circuit court.

been brought during the earlier proceeding."  Sousaris, 92 Hawai'i at 513, 993 P.2d at 547 (2000).

In order for reconsideration to be granted on the basis of newly discovered evidence: "(1) it must be previously undiscovered even though due diligence was exercised; (2) it must be admissible and credible; (3) it must be of such a material and controlling nature as will probably change the outcome and not merely cumulative or tending only to impeach or contradict a witness."  Kawamata Farms, Inc. v. United Agri Products, 86 Hawai'i 214, 251, 948 P.2d 1055, 1092 (1997) (quoting Orso v. City & Cnty. of Honolulu, 56 Haw. 241, 250, 534 P.2d 489, 494 (1975), overruled on other grounds by Kahale v. City & Cnty. of Honolulu, 104 Hawai'i 341, 90 P.3d 233 (2004)).

Here, the ICA correctly noted that Namahoe's arguments regarding notice were already made as part of his HRCP Rule 60(b) motion.  James B. Nutter & Co. v. Namahoe, No. CAAP-17-0000496, 2022 WL 899896 at *11—12.  Most importantly, as the ICA concluded, "there is no cogent argument as to why the 'new' evidence and arguments concerning proper notice could not have been presented earlier."  Id. at *11.

2.    **HRCP Rule 60(b)(3)**

Namahoe asserts that the ICA erred in affirming the circuit court's denial of his HRCP Rule 60(b)(3) motion for

34

untimeliness.  According to the circuit court, the event that triggered the countdown to the one-year deadline was the circuit court's July 2, 2013 Decree of Foreclosure.  Namahoe filed his HRCP Rule 60(b)(3) motion on January 3, 2017, well past the one-year deadline.  Namahoe contends that the "final act" was when JBNC sold the property to a third party in 2016, thus making his motion timely.

We disagree with Namahoe, and hold that his HRCP Rule 60(b)(3) motion was untimely.  The ICA correctly noted that "Namahoe argued that [JBNC's] fraud, misrepresentation, and misconduct occurred when [JBNC] <u>sought and obtained foreclosure against Namahoe</u> on impermissible grounds."  James B. Nutter & Co. v. Namahoe, No. CAAP-17-0000496, 2022 WL 899896 at *7 (App. March 28, 2022) (emphasis added).  As a result, Namahoe was seeking "relief from the Foreclosure Judgment itself . . . [and] not from the sale of the Property to a third party after the Property's sale to [JBNC] was confirmed."  Id. at *7.  Thus, the final judgment, for purposes of HRCP Rule 60(b)(3), was the 2013 Decree of Foreclosure and Namahoe's motion was untimely.

### 3.   HRCP Rule 60(b)(4)

Namahoe next argues that the Decree of Foreclosure was void due to lack of service, because JBNC allegedly mailed notices to Namahoe's home address despite that address not

receiving mail delivery.[21]   However, the November 9, 2012 Return and Acknowledgment of Service was signed by Namahoe, comprising prima facie evidence of valid service.   Namahoe was served with all required documents, including the Complaint, Foreclosure Mediation Notice and Foreclosure Mediation Request, and Summons. **[ICA Dkt. 35:81]**   Furthermore, had Namahoe wanted to contest the signature, HRS § 634-22 (2013) provides the means for him to examine the process server.   Namahoe requested no such examination.

Having established that the above documents were properly served, Namahoe was not deprived of notice.   As the ICA correctly states — and Namahoe does not challenge — under HRCP Rule 5(a), "<u>no service need be made on parties in default for failure to appear</u>, except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4 of these Rules."   HRCP Rule 5(a) (2000) (emphasis added). Therefore, once the complaint was personally served on Namahoe, JBNC was not required to serve subsequent filings, as long as it did not assert additional claims.

---

[21]     Namahoe also alleges that JBNC continued sending mail to Namahoe's P.O. Box despite knowing that it had been deactivated.

**D.   The ICA Erred in Affirming the Circuit Court's Denial of Namahoe's HRCP Rule 60(b)(6) Motion**

Namahoe is entitled to relief pursuant to his HRCP Rule 60(b)(6) motion on two grounds: (1) JBNC and its attorneys committed fraud on the court, and (2) principles of equity necessitate relief from the operation of the foreclosure judgment.  Accordingly, we reverse the ICA's decision affirming the circuit court's denial of Namahoe's HRCP Rule 60(b)(6) motion, and vacate the Decree of Foreclosure insofar as it would preclude Namahoe from asserting a wrongful foreclosure claim against JBNC.[22]

**1.   JBNC committed fraud on the court**

This case presents an opportunity to clarify the applicability of a HRCP Rule 60(b)(6) fraud on the court theory to this set of facts.  Namahoe asserts that the circuit court abused its discretion in "merely punt[ing]" his fraud on the court claim in the separate <u>Domingo</u> wrongful foreclosure action against JBNC, which is currently on appeal.  We agree that the circuit court's denial of a remedy was an abuse of discretion, and that Namahoe was entitled to relief in the immediate action.

This court has defined fraud on the court as "a wrong against the institutions set up to protect and safeguard the

---

[22]   This decision has no bearing on the judgment confirming sale.

public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society." Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 430, 32 P.3d 52, 74 (2001) (quoting Kawamata Farms, 86 Hawai'i at 256, 948 P.2d at 1097). Our case law has provided examples of what rises to the level fraud on the court. As this court further explained:

> Not any fraud connected with the presentation of a case amounts to fraud on the court. It must be a "direct assault on the integrity of the judicial process." Courts have required more than nondisclosure by a party or the party's attorney to find fraud on the court. Examples of such fraud include "bribery of a judge," and "the employment of counsel in order to bring an improper influence on the court."

Schefke, 96 Hawai'i at 431, 32 P.3d at 75 (citations omitted).

Pursuant to HRCP Rule 60(b)(6), courts have broad authority to provide relief from final judgments obtained by fraud on the court, upon a motion made "within a reasonable time."[23] Unlike other motions for relief or reconsideration of a judgment, courts retain flexibility to exercise this power in the face of fraud on the court, precisely because a decision obtained through such means cannot be final. See Kenner v. Comm'r of Internal Revenue, 387 F.2d 689, 691 (7th Cir. 1968) ("[I]t can be reasoned that a decision produced by fraud on the court is not in essence a decision at all, and never becomes

---

[23]    The "reasonable time" limit notably contrasts with the one-year limit on HRCP Rule 60(b)(3) fraud claims.

final."); see also PennyMac Corp. v. Godinez, 148 Hawai'i 323, 328—329, 474 P.3d 264, 269—270 (2020) (noting that the purpose of HRCP Rule 60(b) motions "is to authorize the reopening of a closed case or a final order," and that "[Appellant's] HRCP Rule 60(b) motion was not a new action but rather a continuation of the original foreclosure case."). Further, we have expressed a "preference for judgments on the merits over the finality of judgments procured through fraud." Matsuura v. E.I. du Pont de Nemours and Co., 102 Hawai'i 149, 157—58, 73 P.3d 687, 695—96 (2003).

Fraud on the court cannot be neatly defined, but it is understood by courts, including this court, to affect more than the litigants in the underlying dispute. Cvitanovich-Dubie, 125 Hawai'i at 144—46, 254 P.3d at 455—57. Like other jurisdictions, we narrowly interpret fraud on the court. Compare id., with Ray v. Ray, 647 S.E.2d 237, 239 (S.C. 2007) ("Generally speaking, only the most egregious misconduct . . . in which an attorney is implicated will constitute fraud on the court.") (citation omitted), and SEC v. N. Am. Clearing, Inc., 656 F. App'x 947, 949 (11th Cir. 2016) (stating that the fraud on the court standard "is more exacting than the standard for fraud under [Federal Rules of Civil Procedure (FRCP)] Rule 60(b)(3), encompassing only the most egregious misconduct . . . .").

Otherwise, judgments would remain subject to challenge in perpetuity, and the one-year time limitation on motions for relief predicated on regular fraud pursuant to HRCP Rule 60(b)(3) would be hollowed.

Despite the high threshold for a finding of fraud on the court, we find that JBNC committed fraud on the court in pursuit of this foreclosure against Namahoe.

Namahoe's fraud on the court claim is premised on JBNC's initiation of foreclosure proceedings "without fully disclosing to the lower court the facts supporting the foreclosure." Specifically, Namahoe argues that JBNC did not diligently verify whether he actually failed to make the required repairs through use of a HUD-approved inspector, and JBNC did not provide the court with evidence of Namahoe's alleged failure to make the repairs.

In response to Namahoe's HRCP Rule 60(b)(6) motion, JBNC did not present evidence of Namahoe's alleged failure to make the repairs. JBNC instead reiterates its assertion that Namahoe failed to make the repairs, and argues that it was simply following HUD protocol in calling the loan due and payable — and pursuing foreclosure — as a result of Namahoe's failure to comply with the Repair Rider. JBNC also responds that its actions in this case do not pass the threshold to support a finding of fraud on the court because they involve the

40

parties to the case only. In other words, their conduct does not implicate the judicial process writ large. However, JBNC's conduct does not just involve Namahoe.

Attorneys representing foreclosing lenders must verify and affirm to the court the accuracy of documents proffered by the lender/client in order to prevent unwarranted foreclosures. HRS § 667-17. Attorney affirmations in foreclosure proceedings are a statutory means of protecting homeowners from wrongful foreclosure, as they prevent the courts from advancing fraud by lenders in foreclosure actions. Id. According to the statutory mandate, attorneys shall file an affirmation with the court "that the attorney has verified the accuracy of the documents submitted, under penalty of perjury and subject to applicable rules of professional conduct." Id. The purpose of the statute "is to prevent unwarranted foreclosure actions on residential property by requiring an attorney who files a judicial foreclosure . . . to also submit a signed affidavit to the court . . . stating that the attorney has verified the accuracy of the document submitted." H. Stand Comm. Rep. No. 697-14, in 2014 House Journal, at 1127. The statute specifically notes that:

> During and after August 2010, numerous and widespread insufficiencies in foreclosure filings in various courts around the nation were reported by major mortgage lenders and other authorities, including failure to review documents and files to establish standing and other foreclosure requisites; filing of notarized affidavits that falsely attest to such review and to other critical facts

> in the foreclosure process; and "robosignature" of
> documents.

HRS § 667-17.

Failure to submit adequate documentation, including the attorney affirmation, has been determined to be an adequate basis for denial of a motion for summary judgment. Wells Fargo Bank, N.A. v. Fong, 149 Hawai'i 249, 252, 255—56, 488 P.3d 1228, 1231, 1234—35 (2021). It is reasonably inferred that to require attorney affirmations is to also require them to be accurate and complete. Anything less would render the statutory requirement meaningless. See In re City & Cnty. of Honolulu Corp. Counsel, 54 Haw. 356, 373, 507 P.2d 169, 178 (1973) ("It is a cardinal rule of statutory construction that a statute ought upon the whole be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant."); Korean Buddhist Dae Won Sa Temple of Haw. v. Sullivan, 87 Hawai'i 217, 230, 953 P.2d 1315, 1328 (1998) (courts can consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning.") (bracket and ellipsis points in original). Because attorney affirmations are representations to the court, an inaccurate, incomplete, or otherwise misleading HRS § 667-17 affirmation may constitute a misrepresentation to the court. Accordingly, an inadequate attorney affirmation may rise to the

level of fraud on the court. In these instances, relief from the Decree of Foreclosure is justified.[24]

Here, the attorney affirmation submitted in support of the foreclosure of Namahoe's home was inaccurate and incomplete in several respects. JBNC appears to have initiated foreclosure despite having knowledge that it failed to comply with the Repair Rider — the violation of which triggered the foreclosure. According to the Repair Rider attached to JBNC's complaint, the burden was on JBNC to certify "that the repairs which are funded under this Repair Rider will be completed in a manner to meet HUD property standards required by the Secretary as determined by a HUD-approved inspector." However, the record is devoid of any admissible evidence of Namahoe's alleged failure to carry out the repairs. As the ICA stated in its Memorandum Opinion, "there is <u>no declaration or other evidence in the record of the</u>

---

[24] The circuit court in the Domingo and Namahoe foreclosure action in <u>Domingo v. James B. Nutter & Co.</u>, Civil No. 16-1-0249, CAAP-17-0000324, highlighted the importance of the attorney affirmation:

> If the representations contained in the affirmation required under HRS § 667-17 are not directed to the mortgagor, then to whom are they directed? Quite clearly they are directed to the Court presiding over the foreclosure case. The Court implicitly relies upon the attorney affirmation. The attorney affirmation "helps ensure that Hawai'i's courts are not used as instruments of fraud in foreclosure actions." Conf. Comm. Rep. No. 62-12, in 2013 House Journal, 27th Leg., Reg. Sess. at 1632 (Haw. 2013).
>
> Since the attorney affirmation contains representations to the Court, if the attorney affirmation contains misrepresentations they are misrepresentations to the Court. Sanctions and remedies may be available as a result of these misrepresentations to the Court.

particular repairs Namahoe allegedly failed to complete." No. CAAP-17-0000496, 2022 WL 899896 at \*11 n.10 (App. March 28, 2022) (emphasis added). Furthermore, nowhere in the record does JBNC confirm that Namahoe's property had been inspected by a HUD-certified inspector.[25] Pursuant to the Repair Rider, JBNC had the independent duty to ensure that a HUD-approved inspector had inspected Namahoe's property prior to initiating foreclosure proceedings.

By submitting an attorney affirmation in support of foreclosure against Namahoe, without first verifying that there was an adequate factual and legal basis for foreclosure pursuant HRS § 667-17, the attorney affirmation falsely affirmed the sufficiency of the basis for the foreclosure. This failure by JBNC and its attorneys supports a finding of fraud on the court.

In its Memorandum Opinion, the ICA concluded that the circuit court did not abuse its discretion when it denied Namahoe's HRCP Rule 60(b) motion because "the foreclosure proceedings were final and unappealable, Namahoe had been ejected from his home, and the Property had been purchased by [JBNC] and sold to a third party." Id. at \*11. Implicit in its decision, and more directly addressed in JBNC's Answering Brief,

---

[25] Based on the current record, it is unknown whether any inspectors were sent to survey the state of repairs on Namahoe's property. Namahoe attests that two individuals inspected his property, but that none indicated any problems with Namahoe's repairs.

44

is that "any need for Namahoe to reopen these proceedings was substantially outweighed by the value of finality in this litigation." However, JBNC's conduct toward Namahoe and the subsequent filing of a legally and factually deficient attorney affirmation led the circuit court to conclude that applicable statutes, regulations, and contractual provisions were followed. These failures pass the threshold to constitute fraud on the court, and, accordingly, the circuit court erred in denying Namahoe's HRCP Rule 60(b)(6) motion for relief insofar as it would otherwise preclude Namahoe from asserting a wrongful foreclosure counterclaim.

### 2. Principles of equity necessitate relief

Namahoe's claim for relief under HRCP Rule 60(b)(6) should also have been granted because JBNC had no equitable basis to pursue foreclosure in these specific circumstances. We hold that the circuit court abused its discretion in denying Namahoe relief.

The function of the court in a foreclosure proceeding is to ascertain the precise amount due under the mortgage. Honolulu, Ltd. v. Blackwell, 7 Haw. App. 210, 219, 750 P.2d 942, 948 (1988). A key factor in the court's determination of whether and to what extent to provide equitable relief is whether forfeiture would be harsh and unreasonable under the circumstances. Jenkins v. Wise, 58 Haw. 592, 597–98, 574 P.2d

45

1337, 1341 (1978). We can think of no better example of a harsh and unreasonable forfeiture than foreclosure of one's home based on an alleged default of a $500.00 agreement.

A court's discretionary decision shall not be set aside "unless manifestly against the clear weight of the evidence." Id. at 598, 574 P.2d at 1342. Here, because JBNC failed to disclose all pertinent evidence, the circuit court issued its judgment and denied equitable relief without availing itself of all relevant facts. A careful review of the record leads us to conclude that the Decree of Foreclosure was in error.

As we explained in Jenkins, "[e]quity, . . . abhors forfeitures and where no injustice would thereby result to the injured party, equity will generally favor compensation rather than forfeiture against the offending party." Id. at 597, 574 P.2d at 1341. We have also held in the wrongful foreclosure context that "where the property has passed into the hands of an innocent purchaser for value, . . . an action at law for damages is generally the appropriate remedy." Delapinia v. Nationstar Mortgage LLC, 150 Hawai'i 91, 101-02, 497 P.3d 106, 116-17 (2021) (quoting Mount v. Apao, 139 Hawai'i 167, 180, 384 P.3d 1268, 1281 (2016)).

Accordingly, we hold that Namahoe's HRCP Rule 60(b)(6) motion should have been granted on this alternate ground, and that, accordingly, he should not be precluded from seeking relief in the form of a wrongful foreclosure counterclaim against JBNC.

**3.    Namahoe's HRCP Rule 60(b)(6) motion is not time barred**

Unlike HRCP Rule 60(b)(3) fraud, which imposes a one-year time limit, a party seeking relief under HRCP Rule 60(b)(6) must bring their motion "within a reasonable time."  HRCP Rule 60(b).  We have interpreted HRCP Rule 60(b)(6) as requiring litigants to establish "the existence of 'extraordinary circumstances' that prevented or rendered [them] unable to prosecute an appeal" within the "reasonable time" period.  Haw. Hous. Auth. v. Uyehara, 77 Hawaiʻi 144, 148—49, 883 P.2d 65, 69—70 (1994).  Under the similar federal rule, relief is available under FRCP Rule 60(b)(6) (2007) "within a reasonable time."  FRCP Rule 60(c)(1) (2007).  This phrasing has been interpreted to mean that relief is available "only where extraordinary circumstances prevented a litigant from seeking earlier, more timely relief."  U.S. v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993).

Our case law sets a high bar.  In Uyehara, Uyehara filed his Rule 60(b) motion over three-and-a-half years after

the entry of the order. 77 Hawaiʻi at 149, 883 P.2d at 70 (1994). Uyehara claimed that his delay in filing was "not unreasonable because, throughout this period, [Uyehara] was attempting to obtain counsel." Id. This court concluded, however, that "even under the more relaxed time limitations of HRCP Rule 60(b)(6), it is unreasonable for Uyehara to claim that three and one-half years is a reasonable time expenditure for obtaining an attorney." Id.; see Aiona v. Wing Sing Wo Co., 45 Haw. 427, 432, 368 P.2d 879, 882 (1962) ("'There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.' Three years is far in excess of a reasonable time within which to make a decision as to choice of remedy.") (quoting Ackermann v. U.S., 340 U.S. 193, 198 (1950)).

Here, Namahoe has demonstrated extraordinary circumstances that would justify waiting more than three years from the filing of the Decree of Foreclosure — and more than two years from the filing of the Order Confirming Sale — to file his Rule 60(b) motion. Namahoe recounted that he had "no memory of being served or signing a paper that I was served," and that he was receiving care for an illness. Namahoe further claims that after the Writ of Ejectment was served, he was forced to live in a van "until it broke down." This inquiry is fact-specific and determined on a case-by-case basis. See Alpine Land, 984 F.2d

48

at 1049.  Here, Namahoe has shown that the delay was warranted due to his personal circumstances which were, in significant part, generated by JBNC's conduct.

### V.  CONCLUSION

Namahoe presented two valid bases for relief from the Decree of Foreclosure issued by the circuit court.  We find that JBNC committed fraud on the court, and that the balance of equities weighed against foreclosure in this case.  Thus, the circuit court's denial of Namahoe's HRCP Rule 60(b)(6) motion is hereby reversed, and the Decree of Foreclosure is vacated insofar as it would preclude Namahoe from asserting a wrongful foreclosure claim.  We remand for further proceedings consistent with this opinion.

Kai K.A. Lawrence,
William J. Rosdil,
for petitioner

David J. Minkin,
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

