**Electronically Filed
Supreme Court
SCWC-20-0000590
12-FEB-2026
09:59 AM
Dkt. 34 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

MICHAEL C. GREENSPON,
Petitioner/Plaintiff-Appellant,

vs.

DEUTSCHE BANK NATIONAL TRUST COMPANY; OCWEN LOAN SERVICING,
LLC; JAMES BLAINE ROGERS III; J. BLAINE ROGERS III, ALC; ALAN
JARREN MA; and DENTONS US LLP,
Respondents/Defendants-Appellees.

_____

SCWC-20-0000590

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-20-0000590; CASE NO. 2CC191000092)

FEBRUARY 12, 2026

McKENNA, ACTING C.J., EDDINS, GINOZA, AND DEVENS, JJ., AND
CIRCUIT JUDGE KAWASHIMA, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY McKENNA, ACTING C.J.

## I.   INTRODUCTION

This appeal is from a dismissal of claims against a

lender's attorneys in one of various lawsuits filed by

Michael C. Greenspon ("Greenspon").  The lawsuits originated

from an attempted nonjudicial foreclosure of a Maui property Greenspon purchased in 2003 ("the Property").

In 2010, Deutsche Bank National Trust Company ("DBNTC") obtained title to the Property after an attempted nonjudicial foreclosure sale by a predecessor in interest. DBNTC then filed an ejectment action against Greenspon in the District Court of the Second Circuit, which was dismissed without prejudice.

In 2011, Greenspon filed a wrongful nonjudicial foreclosure lawsuit against DBNTC and others ("Main Action"). Summary judgment was entered in favor of DBNTC. On appeal, in 2016, the Intermediate Court of Appeals ("ICA") vacated the summary judgment and remanded.

On remand, in 2018, DBNTC, now represented by Dentons US LLP, filed an amended counterclaim against Greenspon and a third-party complaint impleading the lender from which it had obtained title. DBNTC noted that Greenspon had remained in possession of the Property since 2008 and had not made payments toward the mortgage. DBNTC sought to revoke the nonjudicial foreclosure and instead proceed with a judicial foreclosure.

In 2019, Greenspon filed the underlying separate lawsuit against DBNTC and Ocwen Loan Servicing, LLC ("Ocwen"), as well as law firms and attorneys that represented them: Dentons US LLP, Alston Hunt Floyd and Ing (which became Dentons

2

Honolulu), and attorneys with Dentons as well as Watanabe Ing LLP. (The Dentons-related attorneys are collectively referred to as "Dentons".) Greenspon's claims included fraud, unfair and deceptive acts and practices ("UDAP") under Hawai'i Revised Statutes ("HRS") § 480-2 (2008), wrongful foreclosure, and other torts.

In 2020, all claims in the underlying lawsuit were settled, except for Greenspon's claims against Dentons. In addition, all claims in the Main Action were settled, except for Greenspon's claims against one set of opposing attorneys in that case.

In the underlying lawsuit, Dentons moved for a judgment on the pleadings on all of Greenspon's claims. Dentons also moved to declare Greenspon a vexatious litigant. The Circuit Court of the Second Circuit[1] ("circuit court") granted both motions and entered final judgment.

Greenspon appealed, challenging the dismissal of his claims against Dentons and the vexatious litigant order. The ICA largely affirmed but ruled that "[w]hen considering the allegations in the complaint, and deeming them true as we must, the circuit court erred in dismissing Greenspon's fraud claim to

---

[1] The Honorable Peter T. Cahill presided.

the extent it alleged fraud on the court." Greenspon v. Deutsche Bank Nat'l Tr. Co. ("Greenspon v. DBNTC"), No. CAAP-20-0000590, 2025 WL 212336, at *3. (Haw. App. Jan. 16, 2025) (SDO).

On certiorari, Greenspon contends that all of his claims against Dentons should be reinstated and that the vexatious litigant order was improper. We hold that the ICA did not err by affirming the circuit court's dismissal of Greenspon's claims against Dentons and by affirming the vexatious litigant order.

We also ordered supplemental briefing regarding the ICA's reinstatement of a fraud on the court claim. We hold that the ICA erred by reinstating this claim against Dentons.

Courts must assess the sufficiency of allegations to determine whether they meet the high threshold for a finding of fraud on the court. Only the most egregious misconduct will constitute fraud on the court. Even assuming Greenspon's allegations against Dentons to be true, they do not meet the high threshold required for an independent action for fraud on the court.

We therefore vacate in part the ICA's April 7, 2025, Judgment on Appeal to the extent it reinstated Greenspon's claim against Dentons based on an alleged fraud on the court theory.

4

We affirm the circuit court's August 28, 2020, Final Judgment in its entirety.

## II. BACKGROUND

### A.    Factual and Procedural Background

This appeal is one in a series of lawsuits and appeals that began with a nonjudicial foreclosure of a Maui property owned by Greenspon.

### 1.    Background up to nonjudicial foreclosure

On March 31, 2003, Michael C. Greenspon obtained a $650,000.00 loan, later modified to $800,000.00, from IndyMac Bank, F.S.B. ("IndyMac") and signed a note ("Note") secured by a mortgage ("Mortgage") encumbering the Property.

On July 11, 2008, IndyMac was closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation ("FDIC"). IndyMac Federal Bank, F.S.B. ("IndyMac Federal") assumed control of IndyMac's assets.

In November 2008, IndyMac Federal sent a letter to Greenspon, demanding payment of $27,664.44 to cure the default on the Mortgage. In January 2009, IndyMac Federal filed a notice of intent to foreclose on the Property. In February 2009, after IndyMac was closed and placed into receivership, IndyMac executed an assignment of Greenspon's Mortgage to IndyMac Federal. This assignment was signed on behalf of IndyMac by an individual who identified himself as Vice

President of IndyMac, who had also identified himself a month earlier as Vice President of IndyMac Federal.  In March 2009, IndyMac Federal was sold to OneWest Bank, F.S.B. ("OneWest").

In early 2010, a nonjudicial foreclosure sale of the Property took place.  On February 26, 2010, FDIC, as receiver for IndyMac, signed a deed for the Property to DBNTC.  On March 12, 2010, a person identified as an officer of FDIC, as receiver for IndyMac Federal, by Cal-Western Reconveyance Corporation ("Cal-Western") as agent, apparently filed a mortgagee's affidavit of this nonjudicial foreclosure under power of sale.  FDIC's deed to DBNTC was not notarized or recorded until April 13 and May 7, 2010, respectively.

### 2. Greenspon's Main Action and appeal

In 2011, through counsel, Greenspon filed the Main Action against DBNTC, IndyMac Federal, OneWest, and Cal-Western alleging wrongful nonjudicial foreclosure and asserting other claims for relief.[2]  Summary judgment was granted in favor of the defendants and Greenspon appealed.

On June 14, 2016, the ICA filed a memorandum opinion affirming in part and vacating in part.  Greenspon v. Deutsche

---

[2] Originally case number 1CC111000194 in the Circuit Court of the First Circuit.  After the ICA vacated summary judgment in favor of DBNTC on Greenspon's wrongful foreclosure claim in Greenspon v. Deutsche Bank Nat'l Tr. Co., No. CAAP-13-0001432, 2016 WL 3280366 (Haw. App. June 14, 2016) (mem. op.), the First Circuit transferred venue of the Main Action to the Circuit Court of the Second Circuit, and the Main Action case number became 2CC171000090.

6

Bank Nat'l Tr. Co., No. CAAP-13-0001432, 2016 WL 3280366 (Haw. App. June 14, 2016) (mem. op.).  The ICA determined that Greenspon stopped making mortgage payments altogether by August 2008 and was in default at the time of the February 26, 2010, foreclosure sale.  2016 WL 3280366, at *5.  With respect to its affirmance of summary judgment on Greenspon's HRS § 480-2 UDAP and fraud claims, the ICA determined (1) none of the alleged actions dealt with transactions in which Greenspon was a consumer as required for a UDAP claim; and (2) that "like all torts, Greenspon must have alleged that [DBNTC and/or OneWest] breached a duty owed to Greenspon and the breach caused injury to Greenspon," and Greenspon did not allege any injury caused by DBNTC or OneWest. 2016 WL 3280366, at *7 (citing Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawai'i 277, 298, 172 P.3d 1021, 1042 (2007)).

But the ICA found genuine issues of material fact as to the validity of the nonjudicial foreclosure procedures employed; it therefore vacated the circuit court's grant of summary judgment as to title, and remanded.  2016 WL 3280366, at *2, *4, *7.

We rejected Greenspon's certiorari application on November 22, 2016.  Greenspon v. Deutsche Bank Nat'l Tr. Co., No. SCWC-13-0001432, 2016 WL 6879563 (Haw. Nov. 22, 2016) (order).

7

### 3.   Dentons' counterclaims in Main Action

After the remand from the ICA, on March 21, 2018, Greenspon filed a second amended complaint against DBNTC and others relating to the origination of his loan, the loan modification, the nonjudicial foreclosure, the 2010 foreclosure sale, and subsequent eviction efforts.

On May 16, 2018, DBNTC, now represented by Dentons, filed an amended counterclaim against Greenspon as well as a third-party complaint impleading IndyMac Federal.  On behalf of DBNTC, Dentons also recorded a Notice of Pendency of Action ("NOPA") in the Bureau of Conveyances, noting that the amended counterclaim could affect the title or right to possession of the Property.  On July 5, 2018, Dentons also recorded an Assignment and Transfer of Lien in the Bureau of Conveyances.

The amended counterclaim noted that Greenspon had remained in possession of the Property after his 2008 default and after the 2010 nonjudicial foreclosure, without any payment. DBNTC sought to rescind the nonjudicial foreclosure, reinstate the Mortgage on the Property, and initiate a judicial foreclosure.  DBNTC also sought an equitable lien, recovery for unjust enrichment, and an ejectment of Greenspon from the Property.

The Main Action ended up being resolved by way of a June 10, 2020, final judgment; all claims between Greenspon and

DBNTC were settled, but Greenspon's claims against Aldridge Pite LLP, the law firm that had represented Cal-Western, were dismissed by the court over Greenspon's objection.

Greenspon appealed the dismissal of his claims against Aldridge Pite, and the ICA affirmed. Greenspon v. Deutsche Bank Nat'l Tr. Co., Nos. CAAP-19-0000391 and CAAP-20-0000442, 2024 WL 2874544, at *2 (Haw. App. June 7, 2024) (SDO). This court rejected certiorari on January 21, 2025. Greenspon v. Deutsche Bank Nat'l Tr. Co., No. SCWC-19-0000391, 2025 WL 252849 (Haw. Jan. 21, 2025) (order).

## B. Underlying 2019 Lawsuit Against Dentons

### 1. Lawsuit and partial settlement

In the meantime, in a separate 2019 lawsuit, Greenspon sued DBNTC and Ocwen based on the filing of their May 2018 amended counterclaim in the Main Action.

In a fifty-eight page first amended complaint filed on September 25, 2019, Greenspon added Dentons, a Dentons attorney, and a Watanabe Ing attorney as defendants. Although the Main Action was still pending at the time, Greenspon's first amended complaint alleged that the actions Dentons took in representing DBNTC, through its filings, recordings, and litigation efforts, constituted fraud, unfair or deceptive practices, and other

9

torts.  Greenspon sought damages and declaratory and injunctive relief regarding title.[3]

On March 30, 2020, all of Greenspon's claims in the subject 2019 lawsuit were settled and dismissed via stipulation, except Greenspon's claims against Dentons.

### 2.    Dentons' motion for judgment on the pleadings

On April 27, 2020, Dentons moved for a judgment on the pleadings under Hawai'i Rules of Civil Procedure ("HRCP") Rule 12(c) (eff. 2000), asserting that Greenspon's remaining claims were barred as a matter of law.  Dentons argued that Greenspon's allegations were prohibited by the Noerr-Pennington doctrine,[4] improperly targeted protected litigation activity, were

---

[3]    Greenspon's first amended complaint contained 14 counts: (I) "Fraud/Intentional Misrepresentation"; (II) "Wrongful Foreclosure;" (III) "Unfair and Deceptive Acts and Practices in Violation of HRS § 480-2"; (IV) "Abusive, Unfair and Deceptive Collection Practices In Violation of the Hawaii Collection Practices Act § 480D"; (V) "Unfair and Deceptive Acts and Practices as Prohibited by HRS § 480;" (VI) "Conversion/Slander of Title/Quantum Meruit"; (VII) "Gross Negligence/Recklessness"; (VIII) "Breach of Fiduciary Duty"; (IX) "Tortious Interference"; (X) "Intentional Infliction of Emotional Distress (IIED)"; (XI) "Damages"; (XII) "Punitive/Exemplary Damages"; (XIII) "Quiet Title/Constructive Trust"; and (XIV) "Injunctive Relief."

[4]    In certain circumstances, the Noerr-Pennington doctrine provides counsel general immunity from statutory liability for their litigation activity based on the First Amendment right to petition the government for a redress of grievances.  See Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006).  Counsel, however, is not immune from liability for activity in "sham litigation."  Sosa, 437 F.3d at 938 (citing Prop. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61 (1993)).  Dentons argued its counterclaim against Greenspon did not fall under the "sham litigation" exception to the Noerr-Pennington doctrine because Greenspon "never advanced a viable basis for avoiding his Mortgage, . . . let alone one that ma[de] the foreclosure action 'objectively baseless.'"  The applicability of the Noerr-Pennington doctrine is not at issue on appeal and we decline to address it further in this opinion.

precluded by the litigation privilege and this court's decision in Hungate v. Law Office of David B. Rosen, 139 Hawai'i 394, 391 P.3d 1 (2017), and otherwise failed to plead the necessary elements of fraud, UDAP, and related claims.

The circuit court granted Dentons' motion.  Even taking the allegations as true, the circuit court concluded Greenspon's remaining claims were barred by applicable privileges and did not state a cognizable claim for relief.  The circuit court entered a written order in Dentons' favor.

## 3. Vexatious litigant motion

In addition to the motion for judgment on the pleadings, Dentons moved to declare Greenspon a vexatious litigant under HRS Chapter 634J.[5]  Dentons cited Greenspon's

---

[5]    HRS § 634J-1 (2016) defines "vexatious litigant" as a plaintiff who does any of the following:

> (1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five civil actions other than in a small claims court that have been:

> (A) Finally determined adversely to the plaintiff; or

> (B) Unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing;

> (2) After litigation has been finally resolved against the plaintiff, relitigates or attempts to relitigate in propria persona and in bad faith, either:

> (A) The validity of the determination against the same defendant or defendants as to whom the litigation was finally determined; or

> (B) The cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by

11

years-long pattern of frivolous, burdensome, and harassing litigation arising from the 2010 nonjudicial foreclosure, including more than a dozen lawsuits he filed in Hawai'i, Florida, and Delaware, as well as two denied mandamus petitions against judges.  They also described abusive conduct — personal attacks, violation of a civility directive, deposition misconduct, obstruction of site inspections, and discovery noncompliance.

Greenspon opposed, arguing HRS § 634J-1 did not apply, challenging Dentons' factual characterizations, disputing Dentons' reliance on Florida and Delaware proceedings, and denying bad faith.

The circuit court granted the motion, noting "approximately eight and a half inches" of printed materials documenting Greenspon's conduct in Florida courts as well as his conduct in Hawai'i proceedings.  The circuit court took judicial

---

(continued . . .)

> the final determination against the same defendant or defendants as to whom the litigation was finally determined;
>
> (3) In any litigation while acting in propria persona, files, in bad faith, unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay; or
>
> (4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence.

12

notice of a Florida order restricting Greenspon's filings and determined that the Florida matter involved substantially similar facts to the Hawaiʻi actions. The circuit court also made Hawaiʻi-specific findings, including that Greenspon habitually failed to comply with court orders and that he stated he would not comply "under any circumstances."

The circuit court concluded Greenspon filed unmeritorious papers, conducted unnecessary discovery, and engaged in tactics solely intended to cause delay; his repeated filings burdened the court systems (including overtaxing Florida's e-filing system and creating difficulty accessing filings in Hawaiʻi), and that, taken together, these warranted a vexatious litigant determination under HRS § 634J-1(3) and (4).

### 4. Reconsideration motions

After the judgment on the pleadings in favor of Dentons and the vexatious litigant order, Greenspon moved to set aside the circuit court's rulings under HRCP Rules 54(b) (eff. 2000), 59(e) (eff. 2000), and 60(b) (eff. 2006), which the circuit court denied. The circuit court entered final judgment based on (1) the March 30, 2020, stipulated dismissal with prejudice of claims against the settling non-Dentons parties, and (2) the July 7, 2020, order granting Denton's motion for a judgment on the pleadings, dismissing all remaining claims with prejudice.

C.   ICA Proceedings

Greenspon appealed the circuit court's final judgment in the underlying lawsuit to the ICA, asserting five points of error concerning (1) the dismissal of UDAP claims under HRS § 480-2; (2) the dismissal of Fair Debt Collection Practices Act ("FDCPA"), and HRS Chapter 480D (Collection Practices) claims premised on attorney debt collection activity; (3) the dismissal of all common law tort claims; (4) an alleged abuse of discretion in granting the vexatious litigant motion; and (5) alleged judicial bias.

In a summary disposition order, the ICA affirmed almost entirely except to the extent Greenspon's fraud claim alleged fraud on the court.  Greenspon v. DBNTC, 2025 WL 212336.

The ICA noted that the litigation privilege generally bars claims by a civil litigant against the opposing party's attorney.  Greenspon v. DBNTC, 2025 WL 212336, at *2 (citation omitted).  The ICA affirmed dismissal of the UDAP claims under HRS § 480-2 based on Hungate, 139 Hawai'i at 405, 413, 391 P.3d at 12, 20.  Greenspon v. DBNTC, 2025 WL 212336, at *2-3.  It also affirmed dismissal of Greenspon's wrongful foreclosure claim, noting such claims are not permitted against a lender's attorney and that any abuse of process theory was not pled.  Greenspon v. DBNTC, 2025 WL 212336, at *3.  Additionally, the ICA affirmed the vexatious litigant order and rejected

14

Greenspon's judicial bias claim as waived and, alternatively, meritless. Greenspon v. DBNTC, 2025 WL 212336, at *3-4.

But the ICA ruled that the circuit court erred by dismissing Greenspon's fraud claim to the extent it alleged fraud on the court. Id. The ICA noted its opinion in Domingo v. James B. Nutter & Co., that "an attorney is not immune from liability or civil damages based upon the attorney's own fraud upon the court in prior litigation proceedings." 153 Hawaiʻi 584, 609, 543 P.3d 1, 26 (App. 2023) (holding that the litigation privilege is not an absolute bar against an action by a borrower against a foreclosing lender's attorney arising out of the attorney's fraud on the court in a prior foreclosure action).

The ICA reasoned:

> In his fraud claim, Greenspon maintained among other things that the defendants filed fraudulent documents and made false representations to the court. When considering the allegations in the complaint, and deeming them true as we must, the circuit court erred in dismissing Greenspon's fraud claim to the extent it alleged fraud on the court. See [Domingo, 153 Hawaiʻi] at 599-600, 543 P.3d at 16-17 (explaining we must deem the allegation in the complaint as true).

Greenspon v. DBNTC, 2025 WL 212336, at *3.

Thus, the ICA vacated the circuit court's final judgment only as to the fraud on the court theory and otherwise affirmed.

15

## D.    Certiorari Application and Supplemental Briefing

Greenspon timely filed an application for writ of certiorari.  Greenspon contends all of his claims should be reinstated and that the vexatious litigant order was erroneously entered.

We accepted certiorari without oral argument and pursuant to Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b)(4)(D) (eff. 2022),[6] we also ordered supplemental briefing on the following regarding the ICA's reinstatement of a fraud on the court claim against Dentons:

> [W]hether the Intermediate Court of Appeals' ("ICA") determination that [Greenspon]'s fraud claim survives to the extent it alleged "fraud upon the court" is consistent with or contradicts:
>
> (1) this court's opinion in James B. Nutter & Co. v. Namahoe, 153 Hawai'i 149, 153, 528 P.3d 222, 226 (2023); (2) the ICA's opinion in Domingo v. James B. Nutter & Co., 153 Hawai'i 584, 616, 543 P.3d 1, 33 (App. 2023); (3) the ICA's June 14, 2016 memorandum opinion in Greenspon v. Deutsche Bank Nat'l Tr. Co., No. CAAP-13-0001432, 2016 WL 3280366 (Haw. App. June 14, 2016); and (4) the August 5, 2020 vexatious litigant order in Greenspon v. Deutsche Bank Nat'l Tr. Co., Case No. 2CC191000092.

---

[6]     HRAP Rule 28(b)(4)(D) provides in relevant part:

Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented.  If an appellate court, when acting on a case on appeal, contemplates basing the disposition of the case wholly or in part upon an issue of plain error not raised by the parties through briefing, it shall not affirm, reverse, or vacate the case without allowing the parties the opportunity to brief the potential plain-error issue prior to disposition.

## III. STANDARDS OF REVIEW

### A. Motion for Judgment on the Pleadings

We review a circuit court's order granting a motion for judgment on the pleadings de novo.  See Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 113 Hawaiʻi 77, 91, 148 P.3d 1179, 1193 (2006).

> In a motion for judgment on the pleadings under HRCP Rule 12(c), the movant must clearly establish that no material issue of fact remains to be resolved and that [they are] entitled to judgment as a matter of law.  In considering a motion for judgment on the pleadings, the [trial] court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.
>
> . . . .
>
> [O]ur task on appeal is to determine whether the [trial] court's order . . . supports its conclusion that the [movant] is entitled to judgment as a matter of law and, by implication, that it appears beyond a doubt that the [nonmoving party] can prove no set of facts in support of [its] claim that would entitle [it] to relief under any alternative theory.

Id. (quoting citations and brackets omitted).

### B. Vexatious Litigant Determination

> A vexatious litigant determination is reviewed under an abuse of discretion standard.  Ek v. Boggs, 102 Hawaiʻi 289, 294, 75 P.3d 1180, 1185 (2003).  "[A]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant."  Id. (alteration in original) (quoting Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawaiʻi 97, 119, 58 P.3d 608, 630 (2002)).

Trs. of Est. of Bishop v. Au, 146 Hawaiʻi 272, 278, 463 P.3d 929, 935 (2020).

17

## IV. DISCUSSION

**A.** **The Circuit Court did not Err in Granting the Motion for Judgment on the Pleadings as to All Claims Against Dentons**

> **1.** **The circuit court did not err in dismissing the claims for which dismissal was affirmed by the ICA**

Greenspon alleges the ICA erred by affirming the circuit court's dismissal of his claims against Dentons, other than the fraud on the court claim the ICA reinstated. We disagree.

Our opinion in Hungate precludes Greenspon's UDAP claim against Dentons. There, the plaintiff alleged that the mortgagee and its counsel conducted an unlawful nonjudicial foreclosure of his property[7] and that they did so in violation of common law duties and HRS § 480-2.[8] Hungate, 139 Hawai'i at 400, 391 P.3d at 7. The mortgagee's attorney filed a motion to dismiss under HRCP 12(b)(6), which the circuit court granted, and plaintiff appealed. Id.

In affirming the dismissal, we opined, "[g]enerally, a duty imposed on an attorney in favor of an adversary of the attorney's client poses an unacceptable conflict of interest [and] [f]or that reason, absent special circumstances attorneys

---

[7] The nonjudicial foreclosure statutes at issue were HRS §§ 667-5 and -7 (Supp. 2008), which have since been repealed. Hungate, 139 Hawai'i at 398, 400, 391 P.3d at 5, 7.

[8] The plaintiff alleged these claims under HRS § 480-2. Hungate, 139 Hawai'i at 409, 391 P.3d at 16.

owe no duty of care to non-clients." Hungate, 139 Hawaiʻi at 405, 391 P.3d at 12 (internal quotation marks and citations omitted). Further, we reasoned that allowing UDAP claims to be asserted under HRS Chapter 480 against an opposing attorney could compromise the attorney's representation of the client:

> [T]he role of an attorney involves representing a client's interests against those of an opposing party within an adversary system. Attorneys bear a duty to zealously represent clients within the bounds of the law.
> . . . .
> Permitting a party to sue [their] opponent's attorney for [claims under HRS Chapter 480] in foreclosure actions presents [a]n . . . issue in that an attorney's concern with being sued by a party opponent could compromise [their] representation of the client.

Hungate, 139 Hawaiʻi at 413, 391 P.3d at 20. We also noted that an attorney would be "especially vulnerable" because actual deception is not required under HRS § 480-2, as the "capacity to deceive" is all that is required. Id. We explained:

> a plaintiff would need only to allege that opposing counsel has breached the statutory duty under HRS § 480-2 not to engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in a way that caused private damages in order to state a claim.

Id. (ellipses, brackets, and internal quotation marks omitted).

In addition, Greenspon's claims against Dentons arose indisputedly from the firm's practice of law. Claims by a civil litigant against the opposing party's counsel are also generally barred by litigation privilege. Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Hawaiʻi 251, 269, 151 P.3d 732, 750

19

(2007). Granted, "an attorney may be liable for malicious prosecution if [they] act[] for an improper purpose" and "an attorney may also be sued and held personally liable if [they] maliciously participate[] in [an] abuse of process." Id. (citation omitted). But Dentons' actions did not vitiate the litigation privilege.

In Hungate, we did recognize an exception to the general prohibition on bringing civil claims against an opposing party's attorney – the exception for patently illegal activities. We stated in footnote twenty-two that "[o]ur desire to avoid creating unacceptable conflicts of interest in this context, to protect attorney-client counsel and advice from the intrusion of competing concerns, and to allow adequate room for zealous advocacy, does not encompass, for example, allowing attorneys to conduct patently illegal activities on behalf of clients." 139 Hawai'i at 413 n.22, 391 P.3d at 20 n.22.

Here, there is nothing to indicate patently illegal activities by Dentons. Rather, the record indicates Greenspon stopped paying the mortgage but was not dispossessed of the Property, and that Dentons — acting on behalf of DBNTC in the Main Action — sought and obtained leave to file a counterclaim for judicial foreclosure. Dentons followed its counterclaim with standard filings of a NOPA and Assignment and Transfer of Lien.

These actions are not patently illegal and the circuit court correctly determined Greenspon's claims of misconduct against Dentons lacked any factual or legal basis.

2. **The ICA erred by reinstating a fraud on the court claim against Dentons**

While otherwise affirming the circuit court's judgment in favor of Dentons, the ICA vacated the judgment to the extent Greenspon's allegations constituted fraud on the court. Greenspon v. DBNTC, 2025 WL 212336, at *3-*4.

For the following reasons, we hold that the ICA erred by reinstating a claim against Denton based on a fraud on the court theory.

"This court has defined fraud on the court as a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society." Namahoe, 153 Hawaiʻi at 166, 528 P.3d at 239 (internal quotation marks and citations omitted). In Namahoe, we applied the fraud on the court theory against a lender to allow relief from a final judgment based on an inaccurate and incomplete attorney affirmation in support of foreclosure. 153 Hawaiʻi at 170, 528 P.3d at 243. Then, in Domingo, the ICA recognized a cause of action for damages against an attorney based on a fraud on the court theory for an "egregious, legally and factually deficient,

inaccurate and incomplete, materially false and misleading

[judicial foreclosure attorney] affirmation." 153 Hawai'i at

613, 543 P.3d at 30.

But not all fraud connected with the presentation of a

case amounts to "fraud on the court":

> Fraud on the court cannot be neatly defined, but it
> is understood by courts, including this court, to affect
> more than the litigants in the underlying dispute.
> Cvitanovich-Dubie [v. Dubie], 125 Hawai'i [128,] 144-46, 254
> P.3d [439,] 455-57 [(2011)]. Like other jurisdictions, we
> narrowly interpret fraud on the court. Compare id., with
> Ray v. Ray, 374 S.C. 79, 647 S.E.2d 237, 239 (2007)
> ("Generally speaking, only the most egregious misconduct
> . . . in which an attorney is implicated will constitute
> fraud on the court.") (citation omitted), and SEC v. N. Am.
> Clearing, Inc., 656 F. App'x 947, 949 (11th Cir. 2016)
> (stating that the fraud on the court standard "is more
> exacting than the standard for fraud under [Federal Rules
> of Civil Procedure (FRCP)] Rule 60(b)(3), encompassing only
> the most egregious misconduct. . . ."). Otherwise,
> judgments would remain subject to challenge in perpetuity,
> and the one-year time limitation on motions for relief
> predicated on regular fraud pursuant to HRCP Rule 60(b)(3)
> would be hollowed.

Namahoe, 153 Hawai'i at 167, 528 P.3d at 240.

And, in Namahoe, we ruled that courts need to assess

the sufficiency of allegations to determine whether they meet

"the high threshold for a finding of fraud on the court." Id.

(emphasis added). Even if Greenspon's allegations are taken as

true, there are no well-pleaded, particularized factual

allegations of fraud implicating Dentons that meets this high

threshold. See HRCP Rule 9(b) (eff. 2000) ("In all averments of

fraud . . . , the circumstances constituting fraud . . . shall

be stated with particularity."). Moreover, the fraud on the

22

court standard is more exacting than the general standard for fraud.

Namahoe and Domingo are distinguishable from the circumstances here. The fraud on the court in Namahoe consisted of a deficient and misleading attorney affirmation filed in a foreclosure action, which led to a grossly inequitable foreclosure of a reverse mortgage for an alleged failure to make $500 worth of repairs, which had actually been made. 153 Hawai'i at 153, 166, 528 P.3d at 226, 239. The egregious facts in that case supported a finding of fraud on the court that warranted relief from judgment. Namahoe, 153 Hawai'i at 166, 528 P.3d at 239.

And in Domingo, the ICA recognized a fraud on the court claim against an attorney based on the attorney affirmation this court determined in Namahoe to be so egregious that it constituted a fraud on the court. 153 Hawai'i at 592, 543 P.3d at 9. As stated by the ICA, the affirmation was "egregious legally and factually deficient, inaccurate and incomplete, materially false and misleading." Domingo, 153 Hawai'i at 613, 543 P.3d at 30.

Here, Dentons' attorney affirmation, assuming Greenspon's fraud allegations to be true, contained errors concerning the legal status of which entity held the Note and Mortgage after IndyMac ceased operations during the 2008

23

financial crisis.  Even if there were legal errors in that regard, it has been decisively determined that Greenspon stopped making payments altogether on the Note by August 2008 and was in default to his obligations to some entity at the time of the attempts to foreclose.  Greenspon, 2016 WL 3280366, at *5.  And, in contrast to Namahoe and Domingo, there was no foreclosure and Greenspon retained the Property.  Even taking Greenspon's allegations as true, in assessing their sufficiency, they simply do not meet "the high threshold for a finding of fraud on the court."  See Namahoe, 153 Hawai'i at 167, 528 P.3d at 240.  Dentons' filings were not "egregious, legally and factually deficient, inaccurate and incomplete, materially false and misleading," as in Domingo.

        As we made clear in Namahoe, courts must assess the sufficiency of allegations to determine whether they meet the high threshold for a finding of fraud on the court and that only the most egregious misconduct in which an attorney is implicated will constitute fraud on the court.  153 Hawai'i at 167, 528 P.3d at 240.  Greenspon's allegations do not meet this standard.  Therefore, the ICA erred by reinstating Greenspon's claims on the grounds they alleged a cognizable fraud on the court claim.

**B. We Affirm the Vexatious Litigant Determination**

Finally, we address Greenspon's assertion that the ICA erred by affirming the circuit court's vexatious litigant order.

HRS Chapter 634J applies where a litigant continuously makes improper filings or engages in bad-faith litigation conduct. Ek, 102 Hawai'i at 297-98, 75 P.3d at 1188-89. There is ample evidence in the record supporting the circuit court's vexatious litigant findings.

First, under HRS § 634J-1(4), a party may be deemed vexatious if they were previously declared so in another court proceeding involving substantially similar facts. The circuit court took judicial notice of a Florida court order declaring Greenspon a vexatious litigant. The circuit court noted that those proceedings arose from facts related to this matter and other foreclosure-related litigation Greenspon filed in Hawai'i. Greenspon acknowledged the connection as he stated in Florida that he was there "because of [his] Hawai'i state claims." Therefore, the circuit court properly considered the Florida court orders under HRS § 634J-1(4).

Second, Greenspon's conduct in Hawai'i standing alone satisfies the definition of a vexatious litigant under HRS § 634J-1(3). HRS § 634J-1(3) defines a "vexatious litigant" as a plaintiff who "[i]n any litigation while acting in propria

persona, files, in bad faith, unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay."

Contrary to Greenspon's assertions, the statute does not require an explicit finding of "bad faith."  Further, there was substantial evidence of Greenspon's independent vexatious conduct in Hawai'i courts.  See, e.g., Greenspon v. CIT Bank, N.A., No. SCWC-20-000055, 2025 WL 2144094, at *2 (Haw. July 29, 2025) (SDO) ("As to the vexatious litigant ruling, the record [] supports the circuit court's conclusion that Greenspon made 'unnecessary and unmeritorious filings' and had 'a history of disregarding rules and orders and personally disparaging counsel.'").

The record is replete with numerous examples of vexatious conduct, including Greenspon's repeated failures to comply with discovery obligations and pretrial orders, his obstruction of court-ordered site inspections, and his submission of inflammatory and improper filings, including in the instant case.  For example, during one hearing in the underlying lawsuit, Greenspon was instructed to refrain from insulting opposing counsel.  He nevertheless persisted. Greenspon also arrived late to a deposition, refused videotaping despite advance notice, and gave non-responsive and hostile

answers.  Due to Greenspon's behavior, the court reporter left the proceeding, prompting opposing counsel to seek court intervention.  Even after the circuit court ordered the deposition to proceed, Greenspon resisted and further delayed the process.  Greenspon also failed to comply with court-ordered site inspections between 2017 and 2019, sent threatening emails to opposing counsel warning that entry onto the Property would prompt police involvement, and named previously stricken witnesses in violation of court directives.

The circuit court cited this pattern as evidence that Greenspon "habitually fails to comply with court orders" and that his conduct disrupted judiciary proceedings.  In light of this record, the circuit court did not abuse its discretion when it determined Greenspon to be a vexatious litigant and the ICA did not err by affirming this designation.

We therefore affirm the designation of Greenspon as a "vexatious litigant" under HRS Chapter 634J.

## V. CONCLUSION

Based on these reasons, we vacate in part the ICA's April 7, 2025, Judgment on Appeal to the extent it reinstated Greenspon's claims against Dentons based on a fraud on the court

27

theory.  We affirm the circuit court's August 28, 2020, Final

Judgment in its entirety.

Michael C. Greenspon,                /s/ Sabrina S. McKenna
pro se petitioner

                                     /s/ Todd W. Eddins

Paul Alston
John-Anderson L. Meyer,              /s/ Lisa M. Ginoza
for respondents
James Blaine Rogers III,             /s/ Vladimir P. Devens
J. Blaine Rogers III, ALC,
Dentons US LLP, and                  /s/ James S. Kawashima
Jenny J.N.A. Nakamoto

